NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—January, 1884.

JOURNAULT v. FERRIS.

*In the matter of the judicial settlement of the account of* OSCAR C. FERRIS, *and another, trustees under the will of* THOMAS T. FERRIS, *deceased.*

It is no ground for overruling objections to an account that a copy of the objections has not been served upon the attorney for the accounting party, where the same have been filed, and objector's counsel has been heard without opposition before the referee to whom the account was referred.

The claim of an accounting party to be credited with a disbursement made by him as an "expense of administration," does not stand upon the same footing as claims to be credited, *ex. gr.*, with payment of a debt of decedent. In the latter case, *it seems,* an unassailed voucher throws upon an objector the burden of disproving, if disputed, the *justice and reasonableness,* as well as the fact, of payment.

In the former, the Surrogate being authorized to allow credit only for disbursements which are necessary, just and reasonable (2 R. S., 93, § 58), he must be satisfied by competent proof, that such as he allows are of that character.

Testamentary trustees, upon the judicial settlement of their account, asked for the allowance of payments aggregating $7,800, made for services rendered to them in the administration of their trust, such as: receiving funds from them, examining and valuing mortgages, collecting interest, keeping accounts, and rendering accounts to and paying the *cestui que trust.* The referee who passed upon the account allowed the claims because accompanied by vouchers, affording a presumption of the propriety of the expenditure, which had not been overthrown. Upon exception,—

*Held,* that the items were, in part at least, compensation for services which should have been performed by the trustees themselves, and for which they were allowed commissions; and that the matter should be again sent to a referee to take testimony as to the necessity of employing aid in administering the trust, and the value of the services of which the trustees were justified in availing themselves at the expense of the fund.

HEARING of exceptions taken by Aline Journault, formerly Aline Ferris, decedent's widow, and another, to report of referee, to whom was referred the account of Oscar C. Ferris, and another, trustees under decedent's will. The facts appear sufficiently in the opinion.

SHELDON & BROWN, *for A. Journault.*

JOHN R. DosPASSOS, *for Edgar H. Ferris and another.*

G. M. THOMPSON, *for Oscar C. Ferris.*

THE SURROGATE.—This testator, who died in 1873, nominated, by his will, his mother Catherine A. Ferris and his widow Aline Ferris his executrices, and his brother Oscar C. Ferris his executor. He created also certain trusts, and appointed as trustees his mother, his brother Oscar and Miss Catherine E. Kraft (now

Stewart), a sister of his wife. One of these trusts was for the benefit of his widow, who is given the income of a fund of $200,000. The will created another trust for the benefit of his infant daughter, Blanche A. Ferris, now about fourteen years of age. Her trustees are her mother, her aunt Catherine and her uncle Oscar.

By the present proceedings, the trustees of the two trusts last named seek a judicial settlement of their accounts. To these accounts objections were filed by counsel for the testator's widow (who has since married a Mr. Journault), both personally and as guardian of her daughter Blanche. Objections were also interposed by counsel for the testator's son Edgar, who, upon his mother's death, will share in the principal of the fund whereof she is enjoying the income.

The chief objections urged against the accounts in question relate to certain payments made to John M. Pinckney, Esq., for services rendered to the trustee in the management of these trusts. The contested items are as follows: September 28th, 1877, $2,500; May 6th, 1879, $1,900; June 29th, 1880, $3,400.

In behalf of the *cestui que trust*, objection was made to "each and every item of expense set forth in the account of the above trustees," and "specifically to the charges therein contained, of moneys paid by said trustees to John M. Pinckney, Esq., for services and counsel fees." The remainderman, Edgar H. Ferris, objected to the same charges that the sums expended were largely in excess of the value of the services rendered . . . and that they were not properly chargeable against the said principal or the income of the funds, for the reason that the services rendered were such as

it is the duty of trustees personally to render, and for which their commissions are adequate compensation.

The accounts and the objections thereto were sent to a referee, whose report is now before me. He finds that the objections above specified are not well taken. To this report the contestants have filed exceptions, upon which I must now pass. Counsel for trustees claims that the exceptions of Mrs. Journault, personally and as guardian, should be overruled, because he was not served with a copy of her objections. As it appears that the objections were duly filed, I cannot sustain this position. It has been already stated that objections to the same matters were taken by other parties. The counsel for the *cestuis que trust* was present at the hearings before the referee, and without challenge was allowed to take part therein. If opposing counsel wished to exclude him on technical grounds from participating in the reference, the objection should have been interposed at the time.

In finding the disbursement for counsel fees reasonable and proper, the referee uses this language : " I understand the rule to be, in these cases, that the payment of the trustee, accompanied by a voucher, is presumptive evidence of the propriety of the expenditure, and it is incumbent upon the person objecting thereto to show that the expenditure is of a character not justified, or that the amount is unreasonable."

I do not sanction the doctrine thus stated by the referee. On the contrary, in a recent case (St. John v. Mc Kee, *ante, 236*), I declared the following to be the rule applicable in such cases : " Where an executor credits himself in his account with a sum paid by

him as counsel fees, and files the proper voucher therefor, it is perhaps true that, in the absence of evidence supporting an objection to the item, the propriety of the payment, as well as the fact of payment, must be taken for granted by the Surrogate. And yet it may well be doubted.

"It would be very easy to state a case in which the gross injustice of a charge for legal services would be apparent upon the very face of the account. Surely, under such circumstances, no legal technicality as to presumption or burden of proof could compel the Surrogate to adjudicate as just and reasonable what he knew to be unreasonable and unjust." . . . And again: "It does not follow, because the executor and his counsel have acted in good faith, and are themselves honestly agreed in the opinion that five thousand dollars . . . is but fair compensation for the services in dispute, that their conclusions as to the reasonableness of this charge must be adopted in the absence of opposing evidence. On the contrary, there must be affirmative proof, and better proof than is here furnished, of the facts upon which these conclusions are based."

As is pointed out in the case just cited, the claim of an accounting party, to be credited with a disbursement made by him as an "expense of administration," does not stand upon the same footing as do claims to be credited for other payments, such, for example, as payment of debts of the decedent. In the latter case, the claim of credit, if accompanied by an unassailed voucher, throws the burden, upon a party objecting, not only to disprove the *fact* of payment, if the fact be

disputed, but to disprove the *justice and reasonableness* of payment, if that be the matter in contention. In other words, the credit must in such a case be allowed, unless the attacking party shows affirmatively the propriety of its disallowance. But as to disbursements for expenses of administration, the statute authorizes the Surrogate to allow credit for such only as are "actual, necessary, just and reasonable." Whenever such a disbursement, therefore, is objected to, the Surrogate must be satisfied by competent proof that it has been made, and that it has been made justly, reasonably and necessarily.

In the case at bar, it seems to me that the very vouchers themselves suggest the impropriety of allowing a large portion of the items charged therein against the trust estates. Those items are, in part at least, compensation for services which should have been performed by the trustees themselves. For example, the first item of $2,500 covers, among other things, services from December, 1873, to November, 1875, in receiving funds from the trustees, examining the mortgages and the valuation of the mortgages, taking care of the same, collecting interest, paying the *cestui que trust*, keeping the accounts,* and rendering the accounts to the *cestui que trust*. The other items are similar in their character.

In adopting the course which I feel bound to pursue upon this state of facts, I intend no reflection upon the gentleman to whom the trustees have paid the sums for which they now ask reimbursement. The evidence does not justify a doubt that he did all that he claims

---

* Compare Hall v. Campbell (*1 Dem., 415*).

to have done, and, for aught that appears, the reward he has received may be no more than commensurate with the value of his services. But whether his just and reasonable fees can be justly and reasonably charged against either the principal or income of this estate is a question I am not, upon the evidence, as it now stands, prepared to answer in the affirmative.

It is certainly the duty of trustees to invest trust funds, to take heed that their investments are wise, to collect and pay the interest to a *cestui que trust*, and generally to manage with care and prudence the property entrusted to them. For this are they trustees, and, as such, allowed commissions. The evidence indicates that, instead of performing these duties, the trustees here accounting delegated them almost exclusively to the gentleman whom they employed as their agent and counsel. Is the expense which they have thus incurred chargeable against the fund which the testator committed to their hands?

For some of the services to which the disputed payments relate, a reasonable disbursement would very likely be sanctioned by the court, and credited to the trustees in their accounts. But what allowance can properly be made in that regard cannot be determined upon the evidence before me. I must again submit this issue to the referee, to take such further testimony as any of the parties choose to offer, showing the necessity, or lack of necessity, of the employment of Mr. Pinckney to aid the trustees in the control and management of the estate, and showing the value of any services performed by him, of which they were justified in availing themselves at the expense of the trust funds.